**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| J. DOE, | CASE NO. <u>23-4764</u> |
| Plaintiff, | |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| and | |
| UNITED STATES OF AMERICA, | |
| Defendants. | |

## O R D E R

AND NOW, this _____ day of _____, 20___, upon consideration of the Motion of Plaintiff to Proceed Anonymously, and any Response thereto, it is hereby **ORDERED** and **DECREED** that the Plaintiff's Motion is **GRANTED**.

It is **FURTHER ORDERED** and **DECREED** as follows:

1.   Plaintiff is permitted to file the Complaint so that the caption reflects the name of the Plaintiff as, "J. Doe";

2.   The parties shall file any and all pleadings and other documents with the Court using, "J. Doe," for Plaintiff's name, and/or shall redact any pleadings and other documents filed of Plaintiff's name;

3.   Plaintiff is permitted to redact Plaintiff's address from the Complaint, and any amendment thereto.

BY THE COURT:

_____
, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| J. DOE,<br><br>                              Plaintiff,<br><br>              v.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>                              Defendants. | CASE NO. <u>23-4764</u> |

### <u>MOTION OF PLAINTIFF TO PROCEED ANONYMOUSLY</u>

Plaintiff, J. Doe, hereby files the instant Motion to Proceed Anonymously and incorporates by reference all of the arguments contained in the accompanying Brief, as if the same were more fully set forth herein at length.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant the instant Motion to Proceed Anonymously; permit Plaintiff to use "J. Doe" for Plaintiff's name; and permit Plaintiff to redact their home address from the Complaint and any amendment thereto.

Respectfully submitted,

DATED: <u>12/01/2023</u>                BY: _Justin F. Robinette_____

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254
Fax: (267) 592-3067

Justin@JRobinetteLaw.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| J. DOE,<br><br>                             Plaintiff,<br><br>         v.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>                            Defendants. | CASE NO. <u>23-4764</u> |

## <u>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY</u>

Plaintiff, J. Doe, hereby files the instant Brief in Support of the Plaintiff's Motion to

Proceed Anonymously, and states as follows:

## I.    <u>MATTER BEFORE THE COURT:</u>

Plaintiff's Motion to Proceed Anonymously, and Brief in Support Thereof.

## II.    <u>QUESTION PRESENTED:</u>

1.    Whether Plaintiff should be permitted to proceed with a pseudonym and redact
their home address from the Complaint because they have articulated a legitimate
fear of severe harm that is reasonable under existing Third Circuit precedent?

Suggested Answer: **<u>YES.</u>**

## III.    <u>STATEMENT OF FACTS:</u>

Plaintiff files the instant request for anonymity in order to proceed anonymously, as "J.

Doe," in Plaintiff's Complaint. This is an employment discrimination case brought by an

employee of the United States Social Security Administration. <u>See</u> Pltf.'s Compl., at ECF No. 1,

para. 10. Plaintiff is non-binary. <u>See id.</u> at para. 11. Plaintiff's preferred pronouns are "they,"

"them," "theirs."  See id. at para. 12.  According to Plaintiff's Complaint, The Gay and Lesbian Alliance Against Defamation ("GLAAD") defines "non-binary people" as follows: "Nonbinary is a word used by people who experience their gender identity and/or gender expression as falling outside the binary gender categories of 'man' and 'woman.'"  See Pltf.'s Compl., at para. 13 (quoting "In Focus: Nonbinary People," Gay and Lesbian Alliance Against Defamation ("GLAAD"), 11th ed., https://glaad.org/reference/nonbinary/ (Last Accessed Nov. 29, 2023)). Plaintiff alleges that the Defendants discriminated against them on account of their status as a person who is non-binary.  See Pltf.'s Compl., at para. 53.

Plaintiff alleges misgendering—that the Plaintiff's direct supervisor was, Plaintiff contends, unwilling or unable to treat Plaintiff consistent with Plaintiff's gender identity, by using Plaintiff's preferred gender pronouns to refer to Plaintiff.  See, e.g., Pltf.'s Compl., at para. 18-31.  Plaintiff's supervisor routinely misgendered them with incorrect gender pronouns despite being corrected by Plaintiff.  See id. at para. 20-22, 25.  Plaintiff alleges they were misgendered "on a frequent and sometimes daily basis, despite correcting the manager's use of pronouns." See id. at para. 25.  Plaintiff further contends that this conduct amounted to a severe or pervasive hostile work environment.  See id. at para. 61-64.  Plaintiff alleges that the misgendering and harassment went unremedied and ultimately effected their constructive discharge.  See id. at para. 52, 55.

Prior to quitting, Plaintiff repeatedly corrected their gender pronouns and lodged internal complaints about the misgendering, but the misgendering did not stop.  See id. at para. 30-34. Prior to quitting, Plaintiff requested to be referred to by their preferred first name, however, Defendants' management and Plaintiff's coworkers refused to honor Plaintiff's request to be referred to by their preferred first name.  See id. at para. 29.  Plaintiff themself requested and was

approved for a transfer to a different position, but the misgendering still did not stop.  See id. at

para. 45, 48-49.  To make matters worse, after Plaintiff's transfer, Plaintiff's new direct

supervisor actively avoided them, and refused to have scheduled face-to-face meetings with

them, it is respectfully believed and averred, because the supervisor was worried that he would

misgender the Plaintiff, did not want to use the correct gender pronouns for the Plaintiff, or did

not know the correct gender pronouns to use for Plaintiff.  See id. at para. 38-43.  The new

supervisor then recommended Plaintiff be removed from their new position and to return to their

former position, because they were, inter alia, "not a good fit," according to the new supervisor,

which Plaintiff alleges is a "thinly-veiled proxy for anti-trans bias and discrimination."  See id. at

44.  And prior to quitting, Plaintiff brought a Federal EEO complaint, was misgendered by the

third-party EEO investigator, and requested a new investigator.  See id. at para. 32.

   During the EEO investigation into Plaintiff's complaint, one (1) supervisor who was

interviewed misgendered Plaintiff using female gender pronouns during the interview about the

misgendering.  See id. at para. 26.  The Final Agency Decision being appealed in this matter

misgendered Plaintiff—variously with both "his" and "her"—when the Plaintiff is non-binary

and alleges discrimination on this basis.  See id. at para. 34.  Plaintiff has appealed the

unfavorable Final Agency Decision by filing the instant Complaint in Federal District Court.

See id. at para. 8.

   Among the explanations offered by members of the Defendants' management for why

Plaintiff could not be referred to during their employment with gender pronouns that were

consistent with Plaintiff's gender identity were, among other things, that using "they/them" was

allegedly "grammatically incorrect" and allegedly "doesn't make sense," Plaintiff was allegedly

"aggressive" with their use of gender pronouns, when Plaintiff should have allegedly given "the

managers some grace" because allegedly "this is very new to everyone," but likewise implying that conducting any further training for employees including the supervisors who misgendered Plaintiff would "confuse them even more," or words to that effect.  See id. at para. 20, 27, 31. Plaintiff contends that existing precedent supports Plaintiff's position that misgendering can amount to an actionable hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  See id. at para. 66-70.  Plaintiff discussed the misgendering as the reason for their leaving during their exit interview.  See id. at para. 46.  Plaintiff contends that their only option was to seek out other employment opportunities that were welcoming, and Plaintiff respectfully submits that the Defendants have denied them equal employment opportunities on account of their status as a person who is non-binary, and a member of the LGBTQ+ community.  See id. at para. 50, 53.

With this Motion, Plaintiff seeks to proceed anonymously in the instant litigation. Plaintiff has set forth, in the Declaration attached hereto as Exhibit "A," the harassment Plaintiff has faced throughout their life.  See Plaintiff's Declaration in Support of Motion to Proceed Anonymously, attached hereto as Exhibit "A."  Plaintiff was previously assaulted on account of their gender identity, sought a restraining order, and legitimately fears continued future harm against them on account of their gender identity if their name and address are revealed in this lawsuit.  See Pltf.'s Decl., at Ex. "A," para. 1.  Plaintiff has been bullied throughout their life. See id. at para. 2, 4-5.  Plaintiff has been harassed and misgendered.  See id. at para. 2, 4. Plaintiff is also estranged from their mother due to their non-binary status.  See id. at para. 3.

It is respectfully submitted that Plaintiff has set forth sufficient reasons in the Declaration attached hereto as Exhibit "A" to support a legitimate fear of severe harm that is reasonable, and which warrants a conditional grant of anonymity in the instant litigation at this time.

For all of the reasons set forth more fully below, Plaintiff respectfully requests that this Court permit Plaintiff to adopt, "J. Doe," in lieu of Plaintiff's name in this litigation, and to permit them to redact their address from the Complaint, and any amendment thereto.

## IV.   <u>LEGAL ARGUMENT:</u>

It is well-recognized that a party may proceed under a pseudonym in a lawsuit when there is a legitimate fear of social stigma resulting from disclosure of the party's sexual orientation or gender identity.  See <u>Doe v. Megless</u>, 654 F.3d 404, 408-09 (3d Cir. 2011); see also <u>Doe v. Borough of Morrisville</u>, 130 F.R.D. 612, 614 (E.D. Pa. 1990).

In <u>Doe v. Megless</u>, the Third Circuit Court of Appeals specifically relied on the Eastern District of Pennsylvania's decision in <u>Doe v. Borough of Morrisville</u>, <u>supra.</u>, for its holding that cases involving a litigant's transgender status were generally appropriate for pseudonyms. <u>Megless</u>, 654 F.3d at 408-09 (citing <u>Doe v. Borough of Morrisville</u>, 130 F.R.D. at 614)).

The Third Circuit in <u>Doe v. Megless</u> explained that a balancing test should be used when deciding whether "a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation."  <u>Megless</u>, 654 F.3d at 408-09.  Generally speaking, to proceed under a pseudonym, the "plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'"  <u>Megless</u>, 654 F.3d 404, 408 (citing <u>Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.</u>, 596 F.3d 1036, 1043 (9th Cir. 2010)); see also <u>Doe v. United Servs. Life Ins. Co.</u>, 123 F.R.D. 437, 438 (S.D.N.Y. 1988).

The Third Circuit in <u>Megless</u> adopted a "non-exhaustive" list of factors from <u>Doe v. Provident Life and Accident Insurance Company</u>, 176 F.R.D. 464 (E.D. Pa. 1997), with respect to evaluating whether anonymity is warranted, including as follows, with respect to factors that favor anonymity:

5

(1)     The extent the litigant's identity has been kept confidential;

(2)     The basis on which disclosure is feared or avoided, and its substantiality;

(3)     The magnitude of the public interest in maintaining the litigant's confidentiality;

(4)     Whether, due to the purely legal issues, there is an atypically weak public interest in knowing the litigant's identity; and

(5)     Whether the litigant has illegitimate ulterior motives.

Megless, 654 F.3d at 409 (citing Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 467

(E.D. Pa. 1997)).

Furthermore, the following are factors which tend to disfavor anonymity:

(1)     Whether there is universal public interest in accessing the litigant's identity;

(2)     Whether, due to the subject matter, the litigant's status as a public figure, or otherwise, weighs strongly toward knowing [the litigant's] identity, beyond the [general] public interest; and

(3)     Whether opposing counsel, the public, or the press is illegitimately motivated.

Megless, 654 F.3d at 409 (citing Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. at 467).

### A.     Plaintiff Has Articulated a Legitimate Fear of Severe Harm That Is Reasonable As Plaintiff Faces a Risk of Stigma, Violence, or Retribution Based on Their Gender Identity If Plaintiff's Name And Address Are Disclosed In This Lawsuit Beyond An Extent To Which They Are Comfortable.

The Third Circuit explained in Doe v. Megless that the "bases upon which disclosure is

feared or sought to be avoided, and the substantiality of these bases," weigh in favor of granting

anonymity.  Doe v. Megless, 654 F.3d 404, 409 (3d Cir. 2011).

Plaintiff notes that conditional grants of anonymity under analogous circumstances have

been ordered in several transgender employment discrimination cases recently in this

jurisdiction, including in Doe v. The Gardens for Memory Care at Easton, No. 18-4027, ECF

Nos. 3-4 (E.D. Pa. 2018); <u>Doe v. Triangle Doughnuts, LLC</u>, No. 19-5275, ECF No. 23 (E.D. Pa. June 23, 2020); and <u>Doe v. Genesis Healthcare</u>, No. 21-551 (E.D. Pa. Apr. 23, 2021).

Courts in the Eastern District of Pennsylvania also recently permitted anonymity in transgender discrimination litigation involving people who are non-binary, including in <u>Roe v. Tabu Lounge & Sports Bar</u>, No. 20-3688, Dkt. No. 4 (E.D. Pa. Sept. 10, 2020), an employment discrimination case, where the court permitted anonymity for a non-binary transgender litigant, as well as in <u>Doe v. Colonial Intermediate Unit 20, <i>et al.</i></u>, No. 20-1215, Dkt. No. 21 (E.D. Pa. August 25, 2020), where the court permitted "Roe" to be used for the minor-plaintiff, who identified as non-binary, with the adult guardian of the transgender minor-plaintiff identified as "Jane Doe."  In the <u>Doe v. Colonial Intermediate Unit 20, <i>et al</i></u>. case, the defendants did oppose the plaintiffs' requests for anonymity in that case but the court permitted anonymity over the defendants' opposition.

Furthermore, in <u>Doe v. Pennsylvania Department of Corrections</u>, the Hon. Matthew W. Brann found for the transgender employee that they could pursue their employment discrimination case anonymously as, "John Doe."  <u>See</u> <u>Doe v. Pa. Dep't of Corrections</u>, No. 19-1584, 2019 WL 5683437 *1, *2 (M.D. Pa. Nov. 1, 2019) (Brann, J.).  The court held that pseudonyms were generally appropriate in litigation surrounding "transgender issues," in particular noting that "as litigation around transgender issues has increased, so too have more courts permitted transgender plaintiffs to proceed pseudonymously."  <u>Id.</u>  <u>See also</u> <u>Doe v. Univ. of Scranton</u>, Case No. 3:19-cv-01486, ECF No. 24 (M.D. Pa. Mar. 16, 2020) (where the court permitted anonymity for an adult student alleging sexual-orientation discrimination at the defendant-university, reasoning, "In addition to the record containing no indication that the plaintiff's allegations are unfounded, the court is well-aware of the threat of violence that the

LGBTQ community can face.  As such, we find plaintiff's reasons compelling for allowing him to proceed anonymously").

In another recent case out of the Eastern District of Pennsylvania involving a lesbian employee who pled in the complaint that she had a "masculine gender expression," the Honorable Joel H. Slomsky held that the plaintiff could pursue her employment discrimination case under "Michelle 'Doe'," due to the plaintiff's fear of potential retribution, even though the plaintiff acknowledged in that case that she was openly gay.  See Doe v. Parx Casino, No. 18-5289, at p. 2 (E.D. Pa. Jan. 2, 2019).  Although the defendant-employer in Doe v. Parx Casino did not oppose the request for anonymity, the defendant-employer did file a response including in the pertinent statement of facts, *inter alia*, that the plaintiff alleged she was "openly lesbian" in her complaint.  See id. at p. 3.

Even though Judge Slomsky held therefore that the plaintiff could not show that she kept her sexual orientation sufficiently confidential because she admitted to being openly lesbian in her underlying discrimination complaint, the court instead relied on the fact that the plaintiff in Doe v. Parx Casino alleged that the plaintiff "fears that if she were to proceed under her given name, she might face violence, intimidation, and retribution based on her sexual orientation." See id. at p. 2.  The court in Doe v. Parx Casino considered the Megless list of factors to be a "non-exhaustive list," and therefore "not comprehensive."  See id. at pp. 2-3.  Confidentiality, or the degree to which a litigant has kept a certain matter confidential, is only one factor in the list of non-exhaustive Megless factors, and it is not the only factor.

Judge Slomsky ruled in Doe v. Parx Casino that the plaintiff "has shown that she has a reasonable fear of harm if she were to litigate without a pseudonym" because she "alleges that she has faced pervasive harassment based on her sexual orientation and the fact that she has a

masculine gender expression," "[s]he alleges discriminatory conduct by co-workers that range from insults and name-calling to aggression, intimidation, and threats of physical violence," and "[a]s a result, she fears that [not] proceeding anonymously will result in further threats, violence, and retribution."  See id. at p. 3.  This analysis was conducted independently of the question of confidentiality, which the plaintiff in Doe v. Parx Casino could not satisfy according to the court because the plaintiff admitted she was being discriminated against because she was openly lesbian.  See also Doe v. Commonwealth of Pennsylvania, No. 19-2193, Dkt No. 5, at pp. 2-3 (M.D. Pa. Jan. 14, 2020) (granting plaintiff anonymity in transgender discrimination case involving exclusion of gender-confirmation surgery ("GCS") coverage from employer-sponsored health plan, recognizing that disclosure "places [the plaintiff] at risk of being subjected to social stigma and violent attacks").

        In Doe v. Commonwealth of Pennsylvania, the Honorable Sylvia H. Rambo reasoned that anonymity was justified in that case because the plaintiff "fear[ed] that publicly disclosing his gender identity places him at risk of being subjected to social stigma and violent attacks," and that "keeping his name and address stricken from the pleadings would not impair the public's interest in following lawsuits or the opposing parties' interest in investigating the case."  See id. at pp. 2-3.  While Judge Rambo reasoned that "[t]he public may have an interest in following the state of the law governing transgender people," Judge Rambo nevertheless recognized in that case that the public "has very little interest in finding out the identity of a specific transgender person."  See id. at p. 3.  See also Doe v. Dallas, 16-cv-787-JCJ (E.D. Pa. Mar. 10, 2016) (Dkt. 3) (anonymity was permitted for transgender litigant alleging discrimination under the Affordable Care Act); Doe v. Romberger, 16-cv-2337-JP (E.D. Pa. June 27, 2016) (Dkt. 8)

(anonymity was permitted for transgender litigant bringing a challenge to obtain an accurate birth certificate).

In the instant case, Plaintiff's request comports with other courts' grants of anonymity to transgender litigants in this jurisdiction as well as in the Middle District of Pennsylvania. Consistent with the cases cited above, Plaintiff respectfully contends that conditionally granting the instant Motion unless circumstances arise which otherwise warrant disclosure is appropriate at this time so that Plaintiff is not outed as LGBTQ+ beyond an extent to which they are comfortable in this litigation.

Plaintiff's Declaration, attached to this Motion as Exhibit "A," provides specific facts sufficient to establish that Plaintiff has a legitimate fear of severe harm that is reasonable, and which justifies keeping the Plaintiff's identity confidential in this matter.  Plaintiff alleges in the Declaration attached hereto as Exhibit "A," in pertinent part, as follows:

1.  I have been assaulted for being non-binary and applied for a restraining order.

2.  I have been insulted, mocked, and harassed for being non-binary.

3.  I am estranged from my mother because I am non-binary.

4.  I am misgendered because I am non-binary.

5.  I am treated with disrespect because I am non-binary.

6.  I fear that the disclosure of my personal identity in the present matter as well as the details of my personal health information will harm me in the future.

7.  Based on my life to date, I fear that disclosure of my personal identity in this matter will cause me severe harm because of society's discrimination and the stigma against people who are non-binary or gender non-conforming.

See Pltf.'s Decl., at Ex. "A," para. 1-7.  The Plaintiff's Declaration, attached hereto as Exhibit "A," has been redacted of Plaintiff's name and signature, consistent with the relief requested in the instant Motion.

10

Plaintiff also points to additional anecdotal evidence and statistics to support their request as did the plaintiff in Doe v. Gardens for Memory Care at Easton. The court in Doe v. Gardens for Memory Care at Easton found the local and national statistics and data presented in that case to be persuasive. See Doe v. Gardens for Memory Care at Easton, No. 18-4027, ECF Nos. 3, 4, at n. 1, p. 2 (E.D. Pa. 2018). The court reasoned in support of its opinion in Doe v. Gardens for Memory Care at Easton, "In her brief in support of this motion [the plaintiff] speaks of a fear of violence if her name is included in the Complaint citing statistics, several articles, and individual instances of violence against transgender people, in support of those propositions." See id. at n. 1, p. 2. See also Doe v. Genesis Healthcare, No. 21-551, Dkt. No. 7 (E.D. Pa. Apr. 23, 2021).

In a recent opinion, Doe v. Genesis Healthcare, the Honorable Cynthia M. Rufe of the Eastern District of Pennsylvania held in an employment discrimination case brought by a transgender employee that the litigant in that matter was entitled to anonymity, recognizing that "courts in this Circuit have allowed anonymity due to the private and intimate nature of being transgender as well as the widespread discrimination, harassment, and violence faced by these individuals." Doe v. Genesis Healthcare, No. 21-551, Dkt. No. 7, at p. 4 (E.D. Pa. Apr. 23, 2021. The court in Doe v. Genesis Healthcare specifically cited the Eastern District of Pennsylvania's decisions in Doe v. Gardens for Memory Care at Easton and Doe v. Triangle Doughnuts LLC, as well as the Middle District of Pennsylvania's decisions in Doe v. Commonwealth of Pennsylvania and Doe v. Pennsylvania Department of Corrections in support of its holding. See Doe v. Genesis Healthcare, Dkt. No. 7, n. 19.

Plaintiff similarly points out with respect to the instant litigation that statistics confirm transgender individuals are more likely to suffer violence because of their gender identity.[1]  It has been reported statistically that 2021 was the deadliest year on record for transgender individuals.[2]  2020 was the most violent year on record before then,[3] as was the year 2018 before then[4], the year 2017 before then,[5] and the year 2016 before then.[6]  The number of deaths of transgender people is disproportionate.

Locally, as well, transgender women, Shahere "Diamond" Jackson-McDonald, Dominique "Rem'mie" Fells, Mia Green, and Shantee Tucker [7] have been murdered in Philadelphia recently.[8]  Trans man and local transgender activist, Mar'Quis "MJ" Jackson, was

---

[1] See McBride, Sarah, "HRC & Trans People of Color Coalition Release Report on Violence Against the Transgender Community," *Human Rights Campaign* (November 17, 2017; Updated January 2018) [https://www.hrc.org/blog/hrc-trans-people-of-color-coalition-release-report-on-violence-against-the].

[2] See "2021 is now the deadliest year on record for transgender people," *PBS Newshour* (Nov. 18, 2021), https://www.pbs.org/newshour/nation/2021-is-now-the-deadliest-year-on-record-for-transgender-people; Orion Rummler and Kate Sosin, "2021 is now the deadliest year on record for transgender people," https://19thnews.org/2021/11/2021-deadliest-year-record-transgender-people/ (Nov. 9, 2021).

[3] See "Fatal Violence Against Transgender and Gender Non-Conforming Community in 2021,": *Human Rights Campaign* (Last Accessed Sept. 13, 2023), https://www.hrc.org/resources/fatal-violence-against-the-transgender-and-gender-non-conforming-community-in-2021.

[4] See https://www.usatoday.com/story/news/2018/09/26/2018-deadliest-year-transgender-deaths-violence/1378001002/; https://www.cnn.com/2019/01/16/health/transgender-deaths-2018/index.html.

[5] See Human Rights Campaign, "Violence Against the Transgender Community in 2017," [https://www.hrc.org/resources/violence-against-the-transgender-community-in-2017].

[6] See Thomson Reuters Foundation, "2016 was Reportedly the Deadliest Year Ever for Transgender People," *Huffington Post* (November 11, 2016) [http://www.huffingtonpost.com/entry/transgender-people-2016_us_5824f1c3e4b034e38990c47c].

[7] Owens, Ernest, "Black Trans Woman Murdered at Old York Road Wednesday Morning," *Philadelphia Magazine* (Sept. 5, 2018), https://www.phillymag.com/news/2018/09/05/shantee-tucker-black-trans-crime/

[8] See Chang, David, "Transgender Woman Found Shot to Death in Philadelphia Apartment," *NBC 10 Philadelphia* (Dec. 1, 2022), https://www.nbcphiladelphia.com/news/local/transgender-woman-found-shot-to-death-in-philadelphia-apartment/3440360/; Owens, Ernest, "Black Trans Woman Murdered at Old York Road Wednesday Morning," *Philadelphia Magazine* (Sept. 5, 2018), https://www.phillymag.com/news/2018/09/05/shantee-tucker-black-trans-crime/; https://www.nbcnews.com/feature/nbc-out/fugitive-arrested-grisly-slaying-philadelphia-transgender-woman-n1247297 (Nov. 10, 2020); https://www.nbcphiladelphia.com/news/local/philly-man-charged-

murdered in or around December 2022. [9]  Naasire Johnson, a gay man, was recently murdered in

Philadelphia.[10]  In 2019 five (5) individuals allegedly brutally beat a gay man outside a bar in the

Philadelphia Gayborhood.[11]  In 2021, in Western Pennsylvania, news reports stated that "[t]he

recent deaths of trans people of color in Western Pennsylvania signal an alarming trend of

violence," that "[f]our trans people of color have died in Western Pennsylvania in February

[2021], three of whom were killed within one week. [12]  The Morris Home for Hope, an LGBTQ-

specific Philadelphia homeless shelter, appears to have been "firebombed" in a hate crime attack

in 2018.[13]  In July 2017 residents of the same shelter reported being attacked.[14]  The

Commonwealth of Pennsylvania does not have a fully-inclusive non-discrimination ordinance

for sexual orientation or gender identity.  The Commonwealth of Pennsylvania does not have

window legislation for survivors.  Surrounding Northeastern states have both.  Looking to the

explanation, an elevated state legislator, Hon. Darryl D. Metcalfe, who, as majority chairman of

the House State Government Committee, was responsible for keeping a fully-inclusive LGBTQ+

---

with-murder-of-transgender-woman/2547906/ (Sept. 29, 2020); Shaw, Julie, "Philly cops seek killer of trans woman, say motive behind shooting unclear," *Philly.com* (Sept. 5, 2018) [https://www.philly.com/philly/news/crime/shantee-tucker-philadelphia-shooting-trans-woman-old-york-road-hunting-park-20180905.html].

[9] Chang, David, "Arrest Made in Murder of Philly Transgender Activist," *NBC 10 Philadelphia* (Apr. 3, 2023), https://www.nbcphiladelphia.com/news/local/arrest-made-in-murder-of-philly-transgender-activist/3538837/
[10] https://www.inquirer.com/news/philadelphia-kylen-pratt-naasire-johnson-murder-fairmount-park-20220711.html (July 11, 2022).

[11] https://www.lgbtqnation.com/2019/01/5-people-jumped-car-brutally-beat-man-standing-outside-gay-bar/ (Jan. 30, 2019).

[12] Rooney, Kimberly, "The recent deaths of trans people of color in Western Pennsylvania signal an alarming trend of violence," *PGH City Paper* (Mar. 3, 2021), https://www.pghcitypaper.com/news/the-recent-deaths-of-trans-people-of-color-in-western-pennsylvania-signal-an-alarming-trend-of-violence-19015946.

[13] Busey, Kelli, "Philly transgender group home firebombed in hate crime attack," *Planet Transgender* (June 29, 2018), available at [http://planettransgender.com/philly-transgender-group-home-fire-bombed/?cn-reloaded=1].

[14] Nieves, Alicia, "Police:  Transgender People Shot In Paintball Attacks," *CBS Philly* (July 7, 2017), available at [https://philadelphia.cbslocal.com/2017/07/07/philadelphia-police-investigating-series-of-paintball-attacks/].

non-discrimination bill from proceeding to the full committee for a vote in the Commonwealth of

Pennsylvania state House of Representatives, had blocked a resolution honoring Domestic

Violence Awareness Month, because "it has a homosexual agenda."[15]  The Commonwealth of

Pennsylvania is an unwelcome and an unsafe place to be a person who is a member of the

LGBTQ+ community, and in particular, transgender, non-binary, or gender non-conforming.

Violence, including fatal violence, against people who are transgender or gender non-

conforming, is on the rise currently.[16]  Homicides of LGBTQ+ people have been on the rise

since 2007.[17]  The FBI released formal hate crime statistics in 2017 showing what is believed to

be an increase in the number of reported hate crimes.[18]

Plaintiff has alleged a legitimate fear of violence with particularity which is sufficient to

justify anonymity in this case.  Local and national statistics and data on violence against people

who are transgender or gender non-conforming—alongside Plaintiff's individualized fear of

violence articulated in their Declaration—are sufficient to justify a grant of anonymity for

Plaintiff in the instant matter.  It should be pointed out again that the Megless list of factors are

non-exhaustive.  Each factor does not need to be met or not in order for the Court to make a

---

[15] See Women's Law Project (2009), [www.womenslawproject.org/2009/09/24/rep-metcalfe-thinks-domestic-violence-awareness-month-has-a-homosexual-agenda/].

[16] See Marzullo and Libman, Human Rights Campaign, "Research Overview:  Hate Crimes and Violence Against LGBTQ People" (2009), at page 2 [www.hrc.org/resources/hate-crimes-and-violence-against-lgbt-people]; Haeyoun Park and Iaryna Mykhyalyshyn, "LGBT People Are More Likely To Be Targets of Hate Crimes Than Any Other Minority Group," The New York Times (June 16, 2016) [https://www.nytimes.com/interactive/2016/06/16/us/hate-crimes-against-lgbt.html?_r=0].

[17] Wile, Rob, "It's Still Dangerous To Be Gay In America.  Here Are The Statistics That Prove It," *Splinter* (June 12, 2016), [www.splinternews.com/it-s-still-dangerous-to-be-gay-in-america-here-are-the-1793857468].

[18] Dashow, Jordan, "New FBI Statistics Show Alarming Increase in Number of Reported Hate Crimes," *Human Rights Campaign* (November 13, 2018) [www.hrc.org/blog/new-fbi-statistics-show-alarming-increase-in-number-of-reported-hate-crimes].

determination in favor of the plaintiff.  A strong showing on one factor may negate a weak or no such showing on another factor.  <u>Megless</u> sets forth a balancing test.

The court in <u>Doe v. Parx Casino</u> found that the plaintiff had alleged a sufficient justification based on a "legitimate fear of severe harm" directed at the plaintiff on account of the plaintiff's "masculine gender expression," without a showing on the confidentiality prong, since the plaintiff in <u>Doe v. Parx Casino</u> acknowledged being openly gay.  <u>See</u> <u>Doe v. Parx Casino</u>, <u>supra</u>, at p. 3.  The instant case is similar in that Plaintiff is non-binary, and by virtue of that fact, and the allegations pled in the Complaint, Plaintiff acknowledges that they correct their gender pronouns when they are misgendered.  Plaintiff is in a similar position as the plaintiff in <u>Doe v. Parx Casino</u>.  The plaintiff in <u>Doe v. Parx Casino</u> acknowledged being openly gay but it should be acknowledged that having a "masculine gender expression" means that the plaintiff in <u>Doe v. Parx Casino</u> may be read as gender non-conforming (<i>i.e.</i>, that the plaintiff did not so-called "pass").  However, like in <u>Doe v. Parx Casino</u>, Plaintiff in the instant case has, regardless of considerations with respect to the confidentiality prong—such as passing privilege, gender non-conformity, effectively outing oneself in order to correct misgendering, or the act of being out or not out, in one context but not another—Plaintiff has nevertheless set forth a sufficient showing of a general as well as a particularized fear of violence against them on account of their gender identity for the prong regarding the "legitimate fear of severe harm that is reasonable."  A strong showing on the severe harm prong should be sufficient to grant Plaintiff's request for anonymity.

Plaintiff respectfully requests that this Honorable Court permit them to adopt the name, "J. Doe," in this litigation.  Plaintiff requests that this Court permit Plaintiff to redact their home address from the Complaint and any amendment thereto.  Plaintiff respectfully requests that the instant Motion for Anonymity be granted.

15

**B.   The Public Interest Weighs in Favor of Granting Plaintiff's Anonymity**
<u>**Request.**</u>

According to <u>Megless</u>, when deciding the issue of anonymity, the Court should also

consider "the magnitude of the public interest in maintaining the confidentiality of the litigant's

identity . . . ." <u>Megless</u>, 654 F.3d at 409. Conversely, if "there is an atypically weak public

interest in knowing the litigant's identit[y]," then this factor weighs in favor of granting the

litigant anonymity. <u>Id.</u>

Generally speaking, as stated above, people who are transgender are recognized as having

a strong interest in keeping their identity confidential in civil litigation. <u>See</u> <u>Doe v. Pa. Dep't of</u>

<u>Corrections</u>, <u>supra</u>, 2019 WL 5683437, at *2; <u>see also</u> <u>Doe v. Delie</u>, 257 F.3d 309, 315-16 (3d

Cir. 2001) (transgender inmate entitled to medical privacy); <u>Powell v. Schriver</u>, 175 F.3d 107,

111 (2d Cir. 1999) ("[t]he Constitution does indeed protect the right to maintain confidentiality

of one's [transgender status]").

Consideration of the public interest here also weighs in favor of Plaintiff. In the instant

case, as the Plaintiff is not a public figure, there is not a particularly strong interest in revealing

Plaintiff's identity. <u>See</u> <u>Doe v. Provident Life and Acc. Ins. Co.</u>, 176 F.R.D. 464, 468 (E.D. Pa.

1997). This consideration was also recently recognized by Judge Beetlestone in <u>Doe v. Gardens</u>

<u>for Memory Care at Easton</u>, an employment discrimination case brought by a transgender

employee, where Judge Beetlestone reasoned that the public interest weighed in favor of the

plaintiff in that case because the plaintiff was a "certified nursing assistant, not a public figure."

<u>See</u> <u>Doe v. Gardens for Memory Care at Easton</u>, No. 18-4027, ECF Nos. 3, 4, at n. 1, p. 2 (E.D.

Pa. 2018). In the instant case, this is an employment discrimination case that concerns an

employee of the Social Security Administration who is appealing an unfavorable Agency

decision they received. <u>See</u> Pltf.'s Compl., ECF No. 1, para. 8. A review of Plaintiff's

16

Complaint will reveal that Plaintiff appeals and seeks to litigate what are largely *legal* rather than factual issues. This factor therefore weighs in favor of granting Plaintiff's anonymity request. Plaintiff is not a public figure.  Just because Plaintiff is a Federal government employee, this fact does not render them a public figure.

Further, as recently recognized by the Middle District of Pennsylvania in two (2) recent decisions, while there may be an interest in general in the development of the law surrounding, as Judge Brann recognized, "transgender issues" or "transgender litigation," see Doe v. Pennsylvania Department of Corrections, supra, 2019 WL 5683437, at *2, there is, according to Judge Rambo, very little public interest in knowing the specific identity of any particular transgender litigant.  See Doe v. Commonwealth, supra, No. 19-2193, Dkt No. 5, at p. 3.

Plaintiff respectfully contends that the public interest also includes the interest in protecting the Plaintiff's, and other future litigants', privacy surrounding their gender identity. Plaintiff contends that the public interest will best be served by ensuring Plaintiff can proceed anonymously so that Plaintiff does not face severe harm, and so that Plaintiff is not outed beyond an extent to which they are comfortable.  If the instant Motion were denied, Plaintiff and potential future litigants would be faced with the choice of proceeding with the case or having to drop the lawsuit to avoid revealing their identity.  Plaintiff respectfully submits justice would not be served in such an instance.

For this additional reason, Plaintiff's anonymity request should be granted as the public interest weighs in favor of granting Plaintiff's request.  Plaintiff respectfully requests that the instant Motion be granted.

C.   **Plaintiff Seeks to Keep Only a Limited Amount of Information Confidential.**

Plaintiff only seeks to keep a limited amount of information private.  It is especially appropriate to permit anonymity where a court can otherwise "keep the proceedings open to the public while still maintaining the confidentiality of plaintiff's identity."  See Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997).  A related point was also recognized by Judge Beetlestone in the Eastern District of Pennsylvania decision, Doe v. Gardens for Memory Care at Easton.  See Doe v. Gardens for Memory Care at Easton, No. 18-4027, ECF Nos. 3-4, n. 1, p. 2 (E.D. Pa. 2018) ("[Plaintiff] makes a point, however, that she is not requesting that the matter be sealed, only that her name be kept out of the Complaint.  More specifically, she is prepared to conduct discovery, depositions, and trial with her actual preferred name.").

In the instant case, like Doe v. Gardens for Memory Care at Easton, Plaintiff is agreeable to conducting depositions and trial with their actual preferred name and preferred pronouns being used. Plaintiff is also not requesting that this case or any document be sealed.  And, similar to "Michelle" Doe v. Parx Casino, or Doe and Roe v. Colonial Intermediate Unit 20, et al., supra, Plaintiff is willing to proceed under the initial, "J.", to preserve their confidentiality, and in order to be referred to by a gender-neutral designation consistent with their gender identity.  Plaintiff is respectfully moving the Court for permission to proceed with the designation, "J. Doe," and to redact their home address from the pleadings.  Plaintiff only seeks to keep a limited amount of information confidential.  The public can know about the facts and development of this case from the docket activity.  Plaintiff respectfully requests that they be permitted to keep their last name and home address private in court filings and that the instant Motion be granted.

D.   **Plaintiff Also Requests to Keep Their Gender Identity Confidential Pursuant to Plaintiff's Right to Medical Privacy, Which Is Recognized By the Health Insurance Portability and Accountability Act ("HIPAA"), in Order to Permit Plaintiff to Pursue Their Disability-Based Claim At Count III.**

18

Plaintiff further seeks to keep their gender identity private in light of the disability-based claim pled at Count III and because of Plaintiff's interest in medical privacy.  See 45 CFR Part 160, Subparts A and E of Part 164; 45 C.F.R. 160.103 (the Health Insurance Portability and Accountability Act, or "HIPAA").  Plaintiff respectfully submits that Plaintiff's identity should not be disclosed to the public.

A similar medical privacy argument was raised by a transgender plaintiff in an employment discrimination case, out of the Eastern District of Pennsylvania, in Doe v. The Hospital of the University of Pennsylvania, Case No. 19-2881 (E.D. Pa. 2019) (Dkt. 11).  The Court granted the anonymity request in that case.  See Doe v. The Hospital of the University of Pennsylvania, Case No. 19-2881 (E.D. Pa. Dec. 9, 2019) (Dkt. 27).

Plaintiff in the instant action is advancing a similar medical privacy argument.  HIPAA prohibits the disclosure of an individual's protected health information ("PHI") without their consent.  State law as well as certain constitutional provisions also protect Plaintiff's right to medical privacy and from unwarranted disclosures.  See, e.g., Doe v. Delie, supra, 257 F.3d at 315-16; Powell, 175 F.3d at 111.  It is also well-recognized by Federal district courts that the potential social stigma associated with certain mental health conditions can also independently justify anonymity in civil litigation.  See, e.g., Doe v. United Behavioral Health, No. 10-5192, 2010 WL 5173206 (E.D. Pa. Dec. 10, 2010); Doe v. Provident Life and Accident Insurance Company, 176 F.R.D. 464 (E.D. Pa. 1997); and Doe v. Hartford Life & Accident Insurance Company, 237 F.R.D. 545 (D.N.J. 2006).

Plaintiff pleads a disability-based claim at Count III which makes their disability a relevant legal issue in this case.  Count III presents a constitutional and, therefore, a purely legal question for the Court's consideration.  With all due respect, Plaintiff contends it is time for a

judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional or unconstitutional.  Plaintiff respectfully submits that the GID exclusion has created second-class citizens of people who are transgender, non-binary, and gender non-conforming.  Plaintiff alleges the exclusion deprives Plaintiff and other people who are transgender, non-binary, or gender non-conforming of dignity and due process.  Plaintiff has a strong interest in not having their identity revealed in this lawsuit thereby potentially subjecting Plaintiff to social stigma.  This is an additional independent reason to grant anonymity in the instant case.  Plaintiff's Motion should be conditionally granted.

## V.    <u>CONCLUSION:</u>

For all of the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant the instant Motion to Proceed Anonymously; permit Plaintiff to use the pseudonym, "J. Doe"; and permit Plaintiff to redact their address from the Complaint, and any amendment thereto.

Respectfully submitted,

DATED:  <u>12/01/2023</u>          BY: _____

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF NON-CONCURRENCE</u>

Undersigned counsel sent the instant Motion to Proceed Anonymously to the Defendants. Undersigned counsel requested concurrence. Undersigned counsel forwarded the Complaint, Motion, and all attachments—in both redacted and unredacted format—to the United States Attorney's Office, Civil-Process Clerk, Philadelphia, Pennsylvania, via first class and electronic mail; and to the U.S. Department of Justice, Washington, D.C., via first class mail. Defendants have not consented to the relief requested herein.

Respectfully submitted,

DATED: <u>12/01/2023</u>     BY:     */s/ Justin Robinette, Esquire*
Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254
Fax: (267) 592-3067
justin@jrobinettelaw.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Justin F. Robinette, Esquire, Attorney for Plaintiff, J. Doe, in the above-named matter, do hereby certify that on this <u>1st</u> day of <u>DECEMBER</u>, <u>2023</u>, the foregoing Motion of Plaintiff to Proceed Anonymously, together with the Brief in Support thereof and accompanying exhibits, were filed using the Court's electronic filing system, and sent via the method set forth below, on the date set forth below, or as soon thereafter as service can be effectuated:

### *<u>VIA FIRST CLASS MAIL & ELECTRONIC MAIL</u>*

United States Attorney's Office
Attn: Civil-Process Clerk
615 Chestnut St., Suite 1250
Philadelphia, PA 19106
E-mail:  usapae.usattorney@usdoj.gov

### *<u>VIA FIRST CLASS MAIL</u>*

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Respectfully submitted,

DATED: <u>12/01/2023</u>          BY:     *<u>/s/ Justin Robinette, Esquire</u>*
Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254
Fax: (267) 592-3067
justin@jrobinettelaw.com

*Attorney for Plaintiff*